_____

No. 94-3328
_____

```
                                    *
Midwest Motor Express, Inc.;        *
Midnite Express, Inc.; Express      *
Cartage, Inc.                       *
                                    *
             Appellants,            *  Appeal from the United States
                                    *   District Court for the
     v.                             *  District of North Dakota.
                                    *
Central States Southeast and        *
Southwest Areas Pension Fund,       *
                                    *
             Appellee.              *
```

_____

Submitted:  September 14, 1995

Filed:  December 4, 1995
_____

Before WOLLMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
       Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.


     Midwest Motor Express appeals from an order transferring this case
from the District of North Dakota to the Northern District of Illinois.
We affirm the order of the district court.[1]


                                   I.
     Midwest was obligated under its multiemployer collective bargaining
agreement to make contributions to Central States, a pension fund.  During
a labor strike, Midwest ceased making pension contributions to Central
States, creating concern at Central States

_____

     [1]The Honorable Patrick A. Conmy, United States District Judge
for the District of North Dakota.

that Midwest would withdraw and permanently cease making such contributions. If an employer withdraws from a multiemployer plan, the employer is liable to the plan for an amount known as "withdrawal liability." 29 U.S.C. § 1381(a) (1985). The parties litigated the matter of withdrawal liability, but settled the litigation before it reached any conclusion on its merits.

Some time later, the union at Midwest was decertified. This triggered Central States' belief once again that Midwest would withdraw and cease to make contributions. Central States sued Midwest in the Northern District of Illinois and sent Midwest a Notice and Demand of Withdrawal Liability as provided under the Multiemployer Pension Plan Amendments Act of 1980. In response to this notice, Midwest initiated the present action for declaratory and injunctive relief and moved to enjoin Central States from seeking remedies based on Midwest's failure to pay withdrawal liability. (It seems that the proposed injunction was an attempt to prevent Central States from moving ahead in any other forum.) Central States then moved to transfer venue to the Northern District of Illinois under 28 U.S.C. § 1404(a). A magistrate judge[2] granted the motion to transfer and dismissed the motion for injunction and the district court upheld the magistrate's decision. The district court clerk's office, without waiting a reasonable period of time to give the parties an opportunity to file a notice of appeal, immediately mailed the case file to the Northern District of Illinois. The Northern District of Illinois dismissed the case after transfer on the grounds that it had no jurisdiction while this appeal was lodged in the Eighth Circuit.

## II.

We initially address some jurisdictional matters. First, although we generally do not exercise jurisdiction over transfer

---

[2]The Honorable Dwight C. H. Kautzmann, United States Magistrate Judge for the District of North Dakota.

-2-

orders, see, e.g., United States Fire Ins. Co. v. American Family Life Assurance Co., 787 F.2d 438, 439 (8th Cir. 1986), we do so when the order to transfer has the effect of refusing an injunction and the motion for injunction and the order to transfer are inextricably bound up with each other. See 28 U.S.C. § 1292(a)(1); Nordin v. Nutra/System, Inc., 897 F.2d 339, 343 (8th Cir. 1990); Emerson Elec. Co. v. Black & Decker Mfg. Co., 606 F.2d 234, 237 (8th Cir. 1979). In this case, the order had the effect of refusing an injunction, and the order and the injunction sought were inextricably bound up with each other, because the injunction would have prevented Central States from proceeding in the Northern District of Illinois, and the order in fact sent the case to that district.

Second, Central States argues that this court does not have jurisdiction because the district court clerk mailed the court file to the Northern District of Illinois before the notice of appeal was filed in our court. Our circuit takes the view that the physical receipt of the file in the transferee court is the event that signals the end of jurisdiction in the transferor court. In re Nine Mile Limited, 673 F.2d 242, 243-244 & n. 5 (8th Cir. 1982) (per curiam). Central States argues that, under Nine Mile, we never acquired jurisdiction because the notice of appeal was filed after the district court lost jurisdiction of the case. We note, however, that the physical transfer of the file was premature because it was sent in violation of Nine Mile's directive to district court clerks that they wait a reasonable period before transferring case files after a transfer order is entered, 673 F.2d at 244, and also appears to have been an inadvertence since the file was mailed in violation of that clerk's office's own policy (presumably in accordance with Nine Mile's directive) of waiting thirty days before mailing a file pursuant to a transfer.

We question the applicability of Nine Mile when the clerk's physical transfer of the file was premature, mistaken, and was of

-3-

no practical effect.  The premature mailing in violation of <u>Nine Mile</u>'s directive renders the transfer of questionable legal effect.  <u>Cf.</u> <u>Farrell v. Wyatt</u>, 408 F.2d 662, 664 (2d Cir. 1969) ("the question here is whether the district court had power to order the transfer; when that is the issue, we reject the argument ... that the clerk's physical transfer of the file destroyed our jurisdiction").  The mailing also appears to have been a simple mistake, and, frankly, it seems to us odd at best that the clerk's act of mistakenly putting a case file on a mail truck bound for Montana could divest a federal circuit court of appeals of jurisdiction.  The rule that jurisdiction follows the file avoids the procedural and jurisdictional snarl that would likely ensue if two courts were simultaneously working on the same case.  <u>See</u> 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice & Procedure</u> § 3846 at 358 (2d ed. 1986) (exceptions to the rule in question "create possibilities of unseemly duplication of effort, and perhaps even inter-circuit conflict, if an appeal is going forward in one circuit while the papers are lodged in a district court in another").  We need not worry about any such conflict here because the Northern District of Illinois declined jurisdiction over the transferred file.

The premature physical transfer of the file in this case was a violation of our directive in <u>Nine Mile</u>; the Illinois court recognized the mistake and declined jurisdiction.  These two facts separate our case from <u>Nine Mile</u>.  To find under these circumstances that we do not have jurisdiction because the file was accidentally mailed to Illinois would elevate form over substance and serve only to delay the resolution of this appeal.  We conclude that we have acquired jurisdiction.

### III.

We affirm the district court and its decision to transfer this case based upon the "first-filed" rule.  This rule "gives priority, for purposes of choosing among possible venues when parallel

litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). Midwest maintains that Central States' claims were premature when filed and thus legally nonexistent, and that, as a result, the Illinois forum was not the first to acquire jurisdiction. Midwest thus asks this court to weigh the merits of the Illinois action in order to determine whether that forum has jurisdiction. But this is a non sequitur. "A court may have jurisdiction over a case even though the case is one to which there is no merit. ... The jurisdiction of the federal courts is dependent on the subject matter of the action or the status of the parties to it; it is not dependent on the merits of the case." Charles A. Wright, Law of Federal Courts 31 (5th ed. 1994) (footnote omitted); see, e.g., Venner v. Great Northern Ry. Co., 209 U.S. 24, 33-35 (1908). The Illinois court therefore has jurisdiction to decide the issues before it and it obtained this jurisdiction before the North Dakota court did.

Midwest also argues that "compelling circumstances" should lead us to ignore the first-filed rule, see United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488-89 (8th Cir. 1990), but we find the proffered circumstances insufficiently compelling. Midwest again asserts that Central States' claims were premature when filed, but, if the claims are legally infirm, we trust the Illinois court to dismiss them. Midwest also alleges that Central States' complaint contained false statements of fact, and that this constitutes a compelling circumstance for ignoring the first-filed rule. If these alleged misstatements indeed exist, Midwest may move for sanctions in the Illinois court. We might have been be more favorably inclined to Midwest if it had produced evidence that Central States promised or indicated in some manner that it would not sue, that Midwest relied on this representation, and that Central States then filed a surprise complaint, see id. at 489, but Midwest has made no such showing and offers to make none.

-5-

Finally, the district judge suggested at the end of his opinion that he was "reasonably certain" that Illinois courts had greater expertise in pension benefit matters. Midwest argues that this comment demonstrates that the district court made its decision on improper grounds. The order, however, recited legally sufficient grounds for transfer. The comment has the quality of a mere observation or afterthought, and does not suggest to us that the district court abused its discretion in making its decision to transfer.

IV.

There remains an outstanding matter of contempt sanctions. Central States filed a motion for a preliminary injunction in the Illinois action seeking to prevent Midwest from transferring assets and to compel Midwest to pay all past-due amounts under the withdrawal liability payment schedule as well as to make future payments under that schedule. Midwest responded by applying to the Eighth Circuit for an injunction pending appeal preventing Central States from "enforcing, collecting, accepting, claiming or directly or in escrow, obtaining interim payments of alleged pension withdrawal liability from Midwest in any other forum." We granted Midwest's motion for an injunction pending appeal. Central States then modified its motion for injunction in the Illinois action by dropping the request that Midwest pay withdrawal liability, but pushed ahead with its attempt to forbid Midwest from transferring assets. The Illinois court denied the motion and Central States sought review in the Seventh Circuit. Upon Midwest's motion, we found Central States in contempt.

We have reconsidered the order finding Central States in contempt. Our order did not specifically enjoin Central States from seeking to prevent Midwest from transferring assets. See Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (per curiam) (injunction must contain explicit notice of precisely what conduct is outlawed). We are of the view that Central States did not

violate our injunction and therefore reverse our finding of contempt against Central States.

                              V.

        For the foregoing reasons, we affirm.  Midwest's motion for leave to supplement the record is granted.  All other pending motions are denied.

        A true copy.

            Attest:

                CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.