**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

Nos. 97-1785/2016

_____

| | | |
|---|---|---|
| Telectronics Pacing Systems, Inc.; | * | |
| Telectronics Holding, Ltd.; Telectronics | * | |
| Pty., Ltd.; Medical Telectronics Holding | * | |
| and Finance Co., (BV); Telectronics, | * | |
| NV; TPLC, Inc.; Telectronics, SA; | * | |
| Pacesetter, Inc., | * | |
| | * | |
| Appellants/Cross-Appellees, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Guidant Corporation; Cardiac | * | |
| Pacemakers, Inc.; Guidant Sales Corp.; | * | |
| Eli Lilly and Co., | * | |
| | * | |
| Appellees/Cross-Appellants. | * | |

_____

Submitted: February 12, 1998
Filed: May 4, 1998

_____

Before FAGG, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

This case involves an attempted transfer of rights under a patent licensing agreement. It was brought by certain companies involved in designing, manufacturing, and distributing cardiac stimulation devices (collectively the Telectronics Group and

Pacesetter) against several competitors in the medical device business (collectively the Lilly Group) who had filed a state declaratory judgment action seeking a declaration that the attempted transfer was void. The Telectronics Group and Pacesetter sued in federal court to compel arbitration and to enjoin the state proceedings. The district court declined to grant the relief they sought and dismissed their complaint. The Telectronics Group and Pacesetter appeal, and we reverse.

The Telectronics Group consists of Telectronics Pacing Systems, Inc. (TPSI); Telectronics Holding, Ltd. (THL); Telectronics Pty., Ltd. (TPL); Medical Telectronics Holding and Finance Co. (MTHF); Telectronics, NV (TNV); TPLC, Inc.; and Telectronics, SA. That group and Pacesetter, Inc. joined to sue the Lilly Group or Guidant Corporation; Cardiac Pacemakers, Inc. (CPI) (a wholly owned subsidiary of Guidant Corporation); Guidant Sales Corporation, Inc. (GSC) (a wholly owned subsidiary of CPI); and Eli Lilly and Co. (Lilly) (the former parent corporation of CPI).

The Telectronics Group and the Lilly Group had previously entered into a patent cross-licensing agreement on March 8, 1994,[1] by which they provided each other with nonexclusive licenses and sublicenses under their respective patent holdings covering cardiac stimulation devices. The agreement constituted a settlement of all then pending patent infringement litigation between the two groups. Later Pacesetter purchased substantially all of the assets of TPSI and TPLC on November 29, 1996. The transaction involved an assignment to Pacesetter from its affiliate, O Acquisition, Inc., of an agreement it had worked out with TPSI and TPLC.

---

[1]The "Lilly Group" was defined in the 1994 licensing agreement as "Lilly and CPI and Affiliates." § 1.07. The "Telectronics Group" was defined as "Telectronics and Affiliates, including but not limited to TPL, MTHF, TNV, TPSI, TPLC and Telectronics, SA." § 1.08. According to the complaint in this action, Guidant Corporation is the successor in interest to Lilly under the licensing agreement, and CPI changed from a wholly owned subsidiary of Lilly to a wholly owned subsidiary of Guidant sometime in 1994.

Section 12.03 of the 1994 patent cross-licensing agreement permitted the Telectronics Group to transfer its licensing rights under the agreement without the consent of the Lilly Group if there were a "sale of substantially all of the assets of the Telectronics Group." The Telectronics Group and Pacesetter contend that the licensing rights of the Telectronics Group under the agreement were automatically transferred to Pacesetter under § 12.03 when the 1996 purchase was consummated.

Three days before the closing of the 1996 transaction, the Lilly Group brought an action in state court in Indiana[2] to obtain a declaratory judgment that the transaction could not effect a transfer of the Telectronics Group's rights under the cross-licensing agreement because it would not amount to a sale of substantially all of its assets as required for a valid transfer under § 12.03. It also sought to enjoin the Telectronics Group, Pacesetter, and Pacesetter's parent corporation, St. Jude Medical, Inc. (St. Jude), from acting as if the licensing rights had been effectively transferred. In its complaint, the Lilly Group alleged that the sole purpose of the sale was to allow Pacesetter to obtain the Telectronics Group's licensing rights to Lilly Group patents. These licensing rights were identical to those owned by another medical device company, Ventritex, Inc., which were scheduled to expire upon Ventritex' merger into Pacesetter under an October 23, 1996 agreement entered into by Pacesetter, Ventritex, and St. Jude.[3] The Lilly Group claimed that the attempted transfer of the Telectronics Group's rights violated the 1994 licensing agreement, as well as other licensing and common law rights.[4]

---

[2]Three members of the Lilly Group (Guidant Corporation, GSC, and Lilly) are Indiana corporations.

[3]A cross-licensing agreement between the Lilly Group and Ventritex provided that the licenses granted to Ventritex would terminate immediately upon a change in control of Ventritex. Ventritex merged into Pacesetter in May 1997.

[4]The Indiana action was initially removed to federal court but was later remanded. At the time the appeals in this case were submitted, the state court had not ruled on all pending motions, discovery was ongoing, and a trial date had been set for

On December 17, 1996 the Telectronics Group and Pacesetter served the Lilly Group with a notice of demand for binding arbitration of the dispute about the validity of the licensing rights transfer. The letter accompanying the notice indicated that the demand was made under § 11.02 of the 1994 licensing agreement. Section 11.02 provides:

> Any dispute that arises in connection with The Agreement including whether royalty payments are due under any sublicense, shall be resolved by binding Alternative Dispute Resolution ("ADR") in accordance with 35 U.S.C. § 294 and in the manner described in Exhibit B and judgment upon the award made by the Arbitrator may be entered by any Court having jurisdiction thereof. No punitive damages shall be recoverable by any party in such a proceeding. If the arbitrators determine that a third party licensor or other third party is a necessary party to any such dispute, such dispute shall not be governed by this paragraph.

The Lilly Group responded that the dispute was not arbitrable under this section because one or more third parties were necessary for its resolution. It insisted on its right to proceed with the Indiana litigation.

The Telectronics Group and Pacesetter then brought this action in federal court under section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4, seeking injunctive and declaratory relief to enforce the arbitration provisions of the 1994 licensing agreement. Their complaint sought (1) a declaratory judgment that the Lilly Group's claims in the Indiana case arose out of the 1994 licensing agreement and were therefore subject to binding arbitration under § 11.02 of the agreement, (2) an injunction against litigation of the dispute in any other forum, and (3) an order compelling arbitration of the dispute in Minnesota pursuant to the procedures adopted in Exhibit B of the agreement. With the complaint they filed a motion to compel arbitration and for a preliminary injunction against other litigation.

---

late 1998 or early 1999.

The district court denied the motion to compel arbitration and for a preliminary injunction and dismissed the complaint. It believed that the 1994 agreement did not give the arbitrator the exclusive authority to determine whether the existence of a necessary third party rendered a dispute inarbitrable under § 11.02. It decided that the licensing transfer dispute necessarily involved a third party, either the Telectronics Group or Pacesetter,[5] depending upon the validity of the transfer, and that it was therefore not arbitrable. It denied the motion for a preliminary injunction after rejecting the motion to compel arbitration because its decision meant that the Telectronics Group and Pacesetter could not show a likelihood of success on the merits or that an injunction would be in the public interest and because it weighed the balance of harms in favor of the Lilly Group. It also dismissed the complaint.

The denial of a motion to compel arbitration is reviewed de novo, see Storey v. Shearson Lehman Hutton, Inc., 949 F.2d 1039, 1040 (8th Cir. 1991), and any doubts raised in construing contract language on arbitrability "should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The Telectronics Group and Pacesetter claim that the district court erred by proceeding to decide the question whether a third party is necessary to resolve the dispute about the validity of the transfer because this particular question was reserved for the arbitrator under § 11.02 of the 1994 agreement. They claim the parties agreed in 1994 that this issue of arbitrability would be submitted to the arbitrator. The Lilly Group responds that the parties did not agree to submit this type of issue to arbitration and that the district court properly decided the transfer issue. The Lilly Group argues that both the Telectronics Group and Pacesetter are necessary parties to the dispute and that one of them must be a third party because resolution of a transfer dispute inherently

_____

[5]The Lilly Group also contended that St. Jude and Ventritex were necessary third parties to the dispute, but the district court did not reach that argument.

involves a third party, either the purported assignor or the purported assignee, depending on the validity of the assignment. The Telectronics Group and Pacesetter respond that neither of them is a third party because the former, as an original signatory to the licensing agreement, retained the right to arbitrate disputes arising in connection with it and Pacesetter became substituted for the Telectronics Group as a party to the agreement by the 1996 purchase.

The key question before us is whether a court or an arbitrator is to decide if there is a necessary third party for resolution of the license transfer dispute. While federal policy favors referrals to arbitration, there must be clear and unmistakable evidence that the parties agreed to submit to arbitration a particular question concerning the arbitrability of their dispute. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The 1994 licensing agreement provides that "[a]ny dispute . . . shall be resolved" by binding arbitration but it provides for one type of exception and that is when "the arbitrators determine that a third party . . . is a necessary party." § 11.02. The agreement thus speaks to the question of arbitrability with respect to necessary third parties and specifically mentions arbitration in connection with determination of any necessary third party issue. Cf. McLaughlin Gormley King Co. v. Terminix Int'l Co., 105 F.3d 1192, 1194 (8th Cir. 1997) (court properly decided arbitrability where arbitration clause "made no mention of a 'controversy' over arbitrability"). Section 11.02 provides for arbitration of disputes among the parties unless "the arbitrators determine that a third party licensor or other third party is a necessary party to any such dispute" (emphasis added). In other words, the parties agreed both that an underlying dispute cannot be arbitrated if a third party is necessary to its resolution and that the issue of whether a third party is necessary is for the arbitrator. The wording of § 11.02 thus offers "clear and unmistakable evidence" that the parties agreed to arbitrate whether the condition that triggers the exception to arbitration applies.

The Lilly Group argues, nevertheless, that special significance should be read into the use of the word "if" at the beginning of the sentence setting out the exception

to arbitration. It says that this use of a conditional term makes the provision too ambiguous to satisfy the standard in First Options. The language of § 11.02 is not ambiguous, however. The final sentence in fact uses a mandatory "shall" when it speaks of the consequences of the arbitrator's determination that a third party is necessary ("such dispute shall not be governed by this paragraph"). One of the reasons for use of the First Options "clear and unmistakable evidence" standard is that parties to agreements often may not "focus on the significance of having arbitrators decide the scope of their own powers." 514 U.S. at 945. In this case the parties clearly did focus on this issue by choosing to provide that the exception applies "[i]f the arbitrators determine . . ." rather than just stating an exception to the otherwise broad category of arbitrable disputes. The wording of the section shows they considered who would decide whether the exception applies. The agreement's provision for a specific result upon an arbitrator's determination, without a provision for a result upon such a determination by a court, constitutes clear and unmistakable evidence that the parties intended for the arbitrator to decide arbitrability with respect to whether there are any third parties necessary to resolve the underlying dispute.

The parties also differ on the significance of Exhibit B, an appendix to the licensing agreement which describes the procedure by which binding arbitration is to be conducted under § 11.02. Exhibit B begins with a statement that disputes relating to the licensing agreement which cannot be settled by negotiation must be submitted to binding arbitration in accordance with the procedures outlined in the exhibit. Paragraph 1 of the exhibit gives the procedure for providing notice of a demand for binding arbitration, including form of notice, time limit for serving notice, and on whom it must be served. Paragraph 2 discusses the commencement and conduct of the arbitration and provides the method for selection of the arbitrator, the distribution of costs, location of the arbitration (Minnesota), procedures for pre-hearing discovery, the procedural requirements for conducting the hearing before the arbitrator, and conduct of the arbitration consistent with the FAA.

The parties disagree on the meaning of paragraph 2(G) of the exhibit titled "Consolidation." It provides that "[n]o arbitration shall include, by consolidation, joinder, or in any other manner, any additional person not a party to this Agreement, except by written consent of both parties containing a specific reference to this Agreement." The Lilly Group contends that this provision prohibits the participation of third parties in arbitration of any dispute and permits a court to decide the necessity of a third party despite the language in § 11.02 of the agreement about the arbitrator's role in making that particular decision. The Telectronics Group and Pacesetter argue that this provision is not intended to control the issue of whether a dispute is arbitrable but is merely one of a number of provisions intended to guide the arbitrator and the parties in how to conduct an arbitration.

Section 11.02 of the licensing agreement states that arbitration shall be conducted "in the manner described in Exhibit B" (emphasis added). Exhibit B deals with the procedural requirements for arbitration of a dispute under the agreement and the manner in which the arbitration should be handled, not with the substantive scope of arbitrability under the arbitration provision. Unlike § 11.02, paragraph 2(G) of Exhibit B does not state the conditions under which the arbitrators must conclude that a dispute is not subject to arbitration and it does not discuss the scope of arbitrable disputes under the agreement. Once a party serves notice of demand for binding arbitration, paragraph 2(G) does not come into play until after the dispute is referred to an arbitrator and proceedings have begun in accordance with paragraph 2(E). At that point the only way in which a third party may participate in the proceedings is with the written consent of both parties. Paragraph 2(G) does not control whether a third party is necessary for resolution of a dispute, and the procedural provisions in Exhibit B do not govern who decides whether a dispute is arbitrable.

Giving force to § 11.02 of the 1994 licensing agreement is consistent with the Congressional policy in favor of "rapid and unobstructed enforcement of arbitration agreements." Moses H. Cone Memorial Hosp., 460 U.S. at 23. The FAA provides

-8-

both for a stay of litigation raising an arbitrable dispute, 9. U.S.C. § 3, and an affirmative order to compel arbitration, 9 U.S.C. § 4, to enforce such agreements. These provisions "call for an expeditious and summary hearing, with only restricted inquiry into factual issues," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 22, 24. Submitting this arbitrability question to an arbitrator accords with the language of the agreement and "with the intent of the Arbitration Act for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 396 (8th Cir. 1994) (internal quotation marks omitted).

A matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement. See Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994). Generally "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). Section 11.02 provides for the arbitration of any dispute arising "in connection with" the licensing agreement. The underlying issue between the parties concerns whether the transfer of the licensing agreement from the Telectronics Group to Pacesetter complied with the requirements for assignment and transfer under § 12.03 of the agreement. Since this dispute concerns the interpretation of a provision in the agreement, it falls within the scope of § 11.02.

The Lilly Group claims that Pacesetter cannot be treated as a party to the arbitration agreement as the assignee of the Telectronics Group until the licensing transfer is found to be valid but the complaint does not allege that Pacesetter purchased substantially all of the assets of the Telectronics Group as defined in the agreement.

Appellants claim that for purposes of arbitrability Pacesetter is a party to the licensing agreement by virtue of the assignment by the Telectronics Group of its rights and obligations under the sales agreement with Pacesetter. They argue that Pacesetter has a prima facie right to arbitrate because the assignment and transfer provision of the licensing agreement does not require the Lilly Group's consent. They rely on these facts to distinguish cases in which the party seeking to compel arbitration had to demonstrate that it was a valid assignee under the arbitration agreement. See I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 400 (8th Cir. 1986) (where agreement contains no assignment clause and party resisting arbitration denies existence of contract with assignee, court must decide whether assignee may enforce arbitration clause); American Safety Equip. Corp. v. J.P. Maguire & Co., 391 F.2d 821, 823, 828-29 (2d Cir. 1968) (where agreement allowed assignment only with consent of other party, court must determine whether there was agreement to arbitrate with assignee before ordering arbitration of dispute). They therefore contend that the dispute is arbitrable as to Pacesetter because it seeks to arbitrate a claim "which *on its face* is governed by the contract." Merrill Lynch, Pierce, Fenner & Smith v. Hovey, 726 F.2d 1286, 1289 (8th Cir. 1984) (emphasis in original).

Under the circumstances of this case, it is not necessary to decide whether Pacesetter is a party to the licensing agreement in order to grant the motion to compel arbitration. In ruling on the arbitrability of a dispute, a court should not decide the merits of the underlying claims. See AT&T Tech., 475 U.S. at 649. There is an exception where a court may reach the merits, but only where the parties did not clearly and unmistakably agree to reserve the arbitrability question for the arbitrator. See Local 744, Int'l Bhd. of Teamsters v. Hinckley & Schmitt, Inc., 76 F.3d 162, 163-65 (7th Cir. 1996). That exception is not applicable here in light of the 1994 licensing agreement. The question of whether Pacesetter is a party to the agreement cannot be decided without reaching the heart of the parties' dispute -- the validity of the transfer. Pacesetter's possible status as either a party to the licensing agreement or a necessary third party to the dispute is also a question which § 11.02 clearly and unmistakably

delegates to the arbitrators. For these reasons, the question of Pacesetter's status should be submitted to arbitration.

Since the question of whether any third party is needed for resolution of the dispute was reserved by the parties for determination by an arbitrator, the rulings of the district court are reversed. The judgment of dismissal is vacated, and the case is remanded for further proceedings consistent with this opinion. The district court is instructed to permit arbitration to proceed and to reconsider the motion for a preliminary injunction.[6]

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]The cross-appeal of the Lilly Group is dismissed without prejudice. Its notice of appeal indicates that it seeks to appeal the district court's denial as moot of its appeal of a magistrate judge's order declining to extend discovery and of its motions to strike two affidavits. Neither this court nor the district court have considered the affidavits, and we need not decide at this time whether the cross-appeal is properly before the court because its issues will only become relevant if and when the case returns from arbitration.