**MIDAMERICAN ENERGY COMPANY, Plaintiff,**

v.

**COASTAL GAS MARKETING COMPANY, Defendant.**

No. C 98–4066–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Dec. 7, 1998.

Neil E. Giles of Clements, O'Neill, Pierce & Nickens, L.L.P., Houston, TX, A.J. Stoik of Klass Law Firm, Sioux City, Iowa, for Plaintiff MidAmerican Energy.

Guy S. Lipe, Ben H. Sheppard, Jr., Vinson & Elkins, L.L.P., Houston, TX, and Alan Fredregill of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, Iowa, for Defendant Coastal Gas Marketing Company.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR STAY OR TRANSFER

BENNETT, District Judge.

I.   *INTRODUCTION* ..................................................... 788
II.  *LEGAL ANALYSIS* ................................................... 790
     A.   *The First-Filed Rule* ........................................ 790
     B.   *Exceptions to the rule* ...................................... 791
          1.   *"Balance of convenience exception"* ..................... 791
          2.   *"The compelling circumstances exception"* ............... 792
III. *Conclusion* ....................................................... 794

This matter comes before the court pursuant to defendant Coastal Gas Marketing Company's August 11, 1998, motion for stay or transfer. Since this motion was filed, this case has been transferred from the docket of Senior Judge Donald E. O'Brien to the docket of the undersigned. The court heard oral arguments on the motion for stay or transfer on December 3, 1998. Plaintiff MidAmerican Energy was represented by counsel Neil E. Giles of Clements, O'Neill, Pierce & Nickens, L.L.P., in Houston, Texas, who argued the motions, and by A.J. Stoik of the Klass Law Firm in Sioux City, Iowa. Defendant Coastal Gas Marketing Company was represented by counsel Guy S. Lipe, who argued the motion, and Ben H. Sheppard, Jr., both of Vinson & Elkins, L.L.P., in Houston, Texas, and by Alan Fredregill of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., in Sioux City, Iowa.

## I. INTRODUCTION

Plaintiff MidAmerican Energy (MidAmerican) filed this lawsuit on June 12, 1998, against defendant Coastal Gas Marketing Company (CGM). According to the complaint, among other things, MidAmerican, an Iowa corporation, conducts a natural gas marketing operation with its principal place of business in Sioux City, Iowa. CGM, a Delaware corporation with its principal place of business in Houston, Texas, is engaged in similar operations. The complaint alleges that, on December 15, 1995, the parties entered into a "Natural Gas Sale For Resale Contract" (the Agreement), which CGM failed to perform adequately. The Agreement terminated on November 30, 1996. MidAmerican brought this action to compel arbitration pursuant to 9 U.S.C. § 4 of disputes between the parties concerning CGM's performance. "[S]trictly in the alternative," Mi-

dAmerican also seeks damages against CGM for breach of contract, breach of fiduciary duty, fraud, constructive trust/quantum meruit, negligence, and breach of implied duty of good faith and fair dealing. On these alternative claims, in addition to damages, MidAmerican seeks punitive damages, attorneys fees, pre-judgment and post-judgment interest, and costs.

The Agreement stated, in pertinent part, that CGM was to "provide [MidAmerican] a firm delivered service which replicates in all respects 200,000 MMBtu per day of [Natural Gas Pipeline Company of America's] DSS [Delivered Firm Storage Service] service." Complaint Exhibit A, Natural Gas Sale For Resale Contract (the Agreement), Art. IV, ¶ A. This service was to be known as the "Exchange Service." *Id.* Pursuant to Article V of the Agreement, CGM was also to calculate and apply a sharing mechanism for its sale of the portion of the gas MidAmerican released to it each day. MidAmerican alleges that it became concerned about CGM's performance of these terms of the Agreement almost immediately. Specifically, MidAmerican alleges that during and after the term of the Agreement, it continued to dispute CGM's performance of the Agreement "regarding (1) whether CGM provided Exchange Service (as defined in the Agreement) that replicated, in whole or in part, DSS Service on the NGPL; and (2) whether CGM properly calculated and applied the sharing mechanism pursuant to Article V of the Agreement, throughout the term of the Agreement." Complaint, ¶ IV.

Citing the arbitration provisions in Article XII of the Agreement, MidAmerican sought to compel arbitration of these matters by filing a Demand for Arbitration with the Kansas City office of the American Arbitration Association (AAA) on April 19, 1998. MidAmerican requested that the arbitration take place in Sioux City, Iowa. On May 14, 1998, CGM filed with the AAA an objection to the arbitration, in which CGM asserted that the matters in MidAmerican's demand were not arbitrable. The AAA concluded that it did not have authority to administer the arbitration absent a court order or agreement of the parties and affirmed that conclu-

sion on MidAmerican's appeal. MidAmerican then filed the present action on June 12, 1998, seeking to compel arbitration of its disputes with CGM.

However, by that time, CGM had already filed a declaratory judgment action in the United States District Court for the Southern District of Texas (the Texas action). The Texas action was filed on May 15, 1998, the day after CGM filed its objections to arbitration with the AAA and almost a month before this action was filed. In the Texas action, CGM seeks declaratory judgment that the claims asserted in MidAmerican's demand for arbitration are not arbitrable pursuant to the terms of the Agreement; that MidAmerican failed to comply with the requirements of the Agreement for invoking arbitration; that CGM has no obligation to arbitrate any claims before the AAA; and that CGM has no liability to MidAmerican on the claims set out in MidAmerican's demand for arbitration. In the Texas action, CGM also seeks injunctive relief staying arbitration proceedings initiated by MidAmerican.

On August 11, 1998, CGM moved to stay or transfer this action in favor of the Texas action. CGM argues in its motion that the Texas action was filed first and therefore this court should stay this action or transfer it to Texas pursuant to the "first-filed rule" discussed in this court's decision in *Brower v. Flint Ink Corp.,* 865 F.Supp. 564 (N.D.Iowa 1994). CGM argues that its declaratory judgment action cannot be characterized as a "preemptive strike," because MidAmerican had already made its demand for arbitration and it was proper for CGM to challenge that demand in a declaratory judgment action. CGM thus characterizes itself as the "aggrieved party" with the right and need to petition a court for redress. CGM argues further that the balance of convenience does not justify departure from the first-filed rule, because a transfer of the Texas action to Iowa would merely shift the inconvenience of litigating in a foreign forum from one party to the other.

In its response, MidAmerican points out that it has filed in the Texas action a motion to compel arbitration and to transfer the Texas action to Iowa or to dismiss it. Mi-

dAmerican asserts further that CGM has no affirmative defense to any of MidAmerican's claims, but is instead pursuing in Texas a purely declaratory judgment action seeking "negative" declarations that it has no duty to arbitrate and that it has no liability to MidAmerican for the claims MidAmerican asserts. These facts, MidAmerican contends, make it obvious that the Texas action is a purely preemptive strike by which CGM is attempting to foreclose MidAmerican, the "true" plaintiff, from exercising its choice of forum for determination of its own coercive claims. MidAmerican further asserts that CGM's contention that the claims in its demand for arbitration are not arbitrable is groundless and that the AAA termination of the arbitration proceedings has essentially "nullified" CGM's assertions that its judicial action in Texas was necessary to avoid arbitration. Furthermore, MidAmerican asserts that CGM has attempted to draw an unwarranted inference that MidAmerican's claims are not arbitrable from the AAA's termination of its administration when that termination had no more significance than the fact that the AAA could not arbitrate in the absence of CGM's agreement to arbitrate or a court order compelling CGM to arbitrate. MidAmerican further asserts that the Northern District of Iowa is the proper forum for resolution of the disputes between the parties as to the arbitrability of MidAmerican's claims, as well as the merits of those claims themselves. At oral arguments, MidAmerican also pointed out that it had no notice that CGM would oppose arbitration until CGM filed its objections with the AAA and nearly simultaneously filed its declaratory judgment action in Texas federal court.

In its reply brief, CGM attacks MidAmerican's characterization of CGM's Texas action as a preemptive strike, arguing that questions of arbitrability are for a court, not the arbitrator, so that CGM was entitled to insist on a judicial determination of arbitrability. CGM contends that it was only after the AAA terminated its administration of the arbitration demand that MidAmerican acknowledged that the question of arbitrability was one for a court by filing its own action to compel arbitration. CGM points out that MidAmerican filed its own action in Iowa

even though the question of arbitrability was already pending before the Texas court.

In a supplemental response, MidAmerican has provided the court with a copy of a report and recommendation by a magistrate judge in the Southern District of Texas on MidAmerican's motion in the Texas action to dismiss or to compel arbitration. The magistrate judge has recommended that the Texas action be dismissed and that arbitration be compelled. The time for filing of objections to that report and recommendation, however, has not yet run, and the United States District Court for the Southern District of Texas has neither adopted nor rejected the magistrate judge's recommendation at this time. At oral arguments, the parties seemed to agree that the present action should not go forward while the federal court in Texas is pondering the report and recommendation, and possibly while appeal is taken to the Fifth Circuit Court of Appeals if the Texas court does indeed dismiss the Texas action, because if arbitration is compelled in the Texas action, there would be little need for the present action.

## II. LEGAL ANALYSIS

The parties do not quibble with this court's prior statement of the "first-filed rule" or exceptions to it. *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F.Supp. 1334, 1345–54 (N.D.Iowa 1996) (entertaining the first-filed action), *aff'd*, 119 F.3d 688 (8th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997); *Brower v. Flint Ink Corp.*, 865 F.Supp. 564, 567–73 (N.D.Iowa 1994) (entertaining the second-filed action). Rather, they disagree on whether the rule or one of its exceptions is applicable in the circumstances of this case.

### A. The First–Filed Rule

As this court observed in *Terra*, 922 F.Supp. at 1345, and *Brower*, 865 F.Supp. at 567, the Eighth Circuit Court of Appeals has recognized the "first-filed rule" as follows:

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to

consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

*Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir.1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990)); *see also Midwest Motor Express, Inc. v. Central States Southeast and Southwest Areas Pension Fund*, 70 F.3d 1014, 1017 (8th Cir.1995) (stating this rule and citing *Northwest Airlines); Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir.1995) (same). Thus, the "first-filed rule" " 'gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.' " *Midwest Motor Express*, 70 F.3d at 1017 (quoting *Northwest Airlines*, 989 F.2d at 1006). The "first-filed rule" has the benefit of being a

> relatively firm rule that, while providing for the exceptional case, avoids in the main the need for *ad hoc* balancing of innumerable factors on a case-by-case basis [and therefore] is both more predictable for litigants—yielding more speedy, less expensive adjudication—and more easily applied by the courts—preserving scarce judicial resources. These are proper considerations that are consistent with the interests of justice.

*Berisford Capital Corp. v. Central States, Southeast & Southwest Areas Pension Fund*, 677 F.Supp. 220 (S.D.N.Y.1988); *see also Brower*, 865 F.Supp. at 567 (quoting *Berisford Capital* ). Application of the "first-filed rule" is reviewed by the appellate court for abuse of discretion. *Northwest Airlines*, 989 F.2d at 1005; *Goodyear*, 920 F.2d at 489; *Minnesota Mining & Mfg. Co. v. Rynne*, 661 F.2d 722, 724 (8th Cir.1981) (per curiam).

### B. Exceptions to the rule

The parties do not dispute that CGM's Texas action was filed first. What they dispute strenuously is whether filing first should, as CGM argues, suffice to convince this court to stay MidAmerican's lawsuit or transfer it to Texas, or whether, as MidAmerican contends, there is an exception to application of the first-filed rule in this case that requires denial of CGM's motion to stay or transfer. The court will therefore turn to consideration of what exceptions may or may not arise in the circumstances of these two lawsuits to preclude application of the first-filed rule.

#### 1. "Balance of convenience" exception

As this court observed in *Terra* and *Brower*, in some cases considering whether or not to allow a second-filed action to proceed, courts have considered an analogy to 28 U.S.C. § 1404(a) to identify factors in a "balance of convenience" to the parties, either before or in addition to considering other special or compelling circumstances in the "first-filed" analysis. *See Terra Int'l, Inc.*, 922 F.Supp. at 1348–50; *Brower*, 865 F.Supp. at 567–68. In *Terra*, this court opined that consideration of such factors was consistent with the directive of the Eighth Circuit Court of Appeals that the first-filed rule " 'yields to the interests of justice.' " *Terra Int'l, Inc.*, 922 F.Supp. at 1348. This court also summarized some of the pertinent factors in a "balance of convenience" analysis as including the following: whether the forum to which transfer is sought is one in which the action "might have been brought," 28 U.S.C. § 1404(a); the balance of convenience of parties and witnesses, noting that a transfer that merely shifts the inconvenience from one party to the other need not be granted; location of documentary evidence; place in which the conduct complained of occurred; which forum's substantive law applies; the interests of justice; and other relevant factors. *See id.* at 1358–65. The court is not persuaded that CGM has shown that the balance of convenience necessarily favors the Texas forum, nor is it apparent that the

inconvenience of that forum to MidAmerican is sufficient to overcome CGM's filing first in Texas. Thus, because this court finds the balance of convenience is essentially "flat," it will turn to other factors that may be dispositive of the question of where this litigation should proceed.

### 2. The "compelling circumstances" exception

■■■ As the Eighth Circuit Court of Appeals has stated, the first-filed rule is not to be "mechanically" applied, *Boatmen's First Nat'l Bank,* 57 F.3d at 641; *Northwest Airlines,* 989 F.2d at 1005; *Orthmann,* 765 F.2d at 121, but should give way to "compelling circumstances" requiring a result different from that obtained by applying the rule. *See, e.g., Midwest Motor Express,* 70 F.3d at 1017; *Boatmen's First Nat'l Bank,* 57 F.3d at 641; *Northwest Airlines,* 989 F.2d at 1005 ("The rule ... yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation."); *Goodyear,* 920 F.2d at 488–89; *accord Trippe Mfg. Co. v. American Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir.1995) ("This circuit does not rigidly adhere to a 'first-to-file' rule," and finding the rule could be overcome by the district court's inherent power to control its docket and a decision to defer to the court of second filing was therefore proper). In *Brower,* this court attempted to categorize or synthesize from prior decisions what constitutes "compelling circumstances" for disregarding the first-filed rule. *Brower,* 865 F.Supp. at 568–73. This court found that

> [t]he Eighth Circuit Court of Appeals has ... recognized two specific factual circumstances in which it will find an exception to the "first-filed rule" and allow the second suit to continue: (1) where the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first; and (2) where the second-filed action is a continuation of a legal process already begun in that court even though another action concerning the same issues has been filed in between in

another court and is therefore ostensibly the first-filed action.

*Brower,* 865 F.Supp. at 569 (citing *Goodyear,* 920 F.2d at 489); *see also Midwest Motor Express,* 70 F.3d at 1017 (finding "insufficiently compelling" allegations where second filer alleged prematurity of first filer's claims and false statements of fact in the first filer's complaint, but failed to produce evidence that the first filer had "promised or indicated in some manner that it would not sue, that [the second filer] relied on this representation, and that [the first filer] then filed a surprise complaint," also citing *Goodyear,* 920 F.2d at 489).

MidAmerican does not specifically allege that it was "misled" by CGM as to whether CGM would file suit seeking to prevent arbitration, although MidAmerican does point out that it had no notice that CGM would object to arbitration until CGM filed its objections with the AAA and nearly simultaneously filed its action for declaratory judgment. The court finds that MidAmerican cannot bring this case within the first "compelling circumstance" exception to the first-filed rule identified in *Brower, See Brower,* 865 F.Supp. at 569; *accord Midwest Motor Express,* 70 F.3d at 1017, because CGM did not actively mislead MidAmerican about its intention to file suit in Texas, even if it held its cards close to its chest. Nor is there any evidence that the Iowa action is a continuation of a prior action in the second-filed forum so that the intervening lawsuit is only ostensibly the first one filed. *Id.*

■■■ In *Brower,* this court also noted consideration by various courts of a number of further circumstances proffered as sufficiently compelling to overcome the first-filed rule. *Brower,* 865 F.Supp. at 569–73. Most of those circumstances fall generally within the so-called "red flags" identified by the Eighth Circuit Court of Appeals in *Northwest Airlines. Northwest Airlines,* 989 F.2d at 1007; *see also Boatmen's First Nat'l Bank,* 57 F.3d at 641 (identifying the *Northwest Airlines* "red flags"). Those "red flags" are:

> first, that the "first" suit was filed after the other party gave notice of its intention to sue; and, second, that the action was for

declaratory judgment rather than for damages or equitable relief.

*Boatmen's First Nat'l Bank,* 57 F.3d at 641 (citing *Northwest Airlines,* 989 F.2d at 1007). These "red flags," or analogous · circumstances giving rise to similar concerns, are present here, CGM's protestations that it was not "forum shopping" notwithstanding. First, although MidAmerican had not given notice of its intention to sue when CGM filed its suit in Texas, MidAmerican had clearly given notice that, in its view, the dispute between the parties could not be settled amicably and MidAmerican had made a demand for the *alternative* dispute resolution provided for in the Agreement, arbitration rather than litigation. *Cf. id.* Second, CGM's suit is for declaratory judgment, not for damages or equitable relief. *Id.* CGM contends, however, that its declaratory judgment action raises no "red flag," because it was entitled to seek judicial determination of the arbitrability of MidAmerican's claims in a declaratory judgment action.

■ As a broad proposition, CGM is correct that arbitrability is a question for the courts, not the arbitrator, unless the parties have also agreed to arbitration of that question. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (also observing that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so," citing *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *Telectronics Pacing Systems, Inc. v. Guidant Corp.,* 143 F.3d 428, 431 (8th Cir.1998); *McLaughlin Gormley King Co. v. Terminix Int'l Co.,* 105 F.3d 1192, 1193–94 (8th Cir. 1997). That broad proposition, however, does not mean that CGM's filing of the Texas action necessarily was not a preemptive strike to deprive MidAmerican of its choice of forum. The fact that the declaratory judgment action is colorable does not change the fact that the Texas action is an action for declaratory judgment rather than for damages or equitable relief, that CGM has not

asserted any affirmative claim or defense in the Texas action, although CGM does seek a declaration that it is not liable on MidAmerican's underlying claims, nor does it change the fact that CGM filed the suit with notice of MidAmerican's intention to seek resolution of the dispute between the parties in a judicial or alternative forum *in Sioux City, Iowa. Boatmen's First Nat'l Bank,* 57 F.3d at 641 (citing *Northwest Airlines,* 989 F.2d at 1007). CGM could, and effectively did, force a judicial determination of the arbitrability of MidAmerican's claims simply by objecting to the arbitration before the AAA. However, CGM only took that step at the same time it filed its suit for declaratory judgment, thereby attempting to secure its choice of forum for resolution of the arbitrability question and MidAmerican's claims as well. The federal policy favoring arbitration, *see, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), would be significantly undermined if, in order to be sure of securing its choice of forum, the party seeking arbitration had to file a judicial action to compel arbitration and to assert its claims at the same time it made a demand for arbitration, or face the likelihood that the party opposing the arbitration would immediately file a declaratory judgment action in its favored forum challenging the arbitrability of the claims.

The circumstances presented here are therefore sufficiently compelling to overcome "mechanical" application of the first-filed rule.[1] *See Northwest Airlines,* 989 F.2d at 1005 ("This first-filed rule 'is not intended to be rigid, mechanical, or inflexible,' " quoting *United States Fire Ins. Co.,* 920 F.2d at 489, in turn quoting *Orthmann,* 765 F.2d at 121). Thus, CGM's motion to transfer this action in favor of the Texas action pursuant to the first-filed rule will be denied.

However, the court agrees that, for practical reasons, it is inadvisable for matters to proceed in this action at full speed, because arbitration—MidAmerican's principal goal in

---

1. The court does not find the "dead heat" exception, also discussed in *Terra,* to be applicable here, because it is clear that MidAmerican's action was filed nearly a month after CGM's, not within minutes or hours of the first-filed action. *See Terra Int'l, Inc.,* 922 F.Supp. at 1350–54.

this lawsuit—may be compelled in the Texas action if the Texas district court adopts the magistrate judge's recommendation. For example, preparation of a proposed scheduling order should be delayed until it is apparent that this lawsuit will need to go forward. Therefore, although the court will not transfer or stay the present action, it will toll or hold in abeyance compliance with case management deadlines until the Texas court has ruled upon the magistrate judge's report and recommendation.

### III. CONCLUSION

For the reasons state above, Coastal Gas Marketing Company's August 11, 1998, motion to stay or transfer this action to the federal court in Texas is **denied.** However, all case management deadlines in this action are **tolled** until the Texas court has ruled upon the magistrate judge's report and recommendation to dismiss the Texas action and compel arbitration. The parties **shall file** a status report and request for status conference upon the filing of a decision of the court in Texas on the magistrate judge's report and recommendation.

**IT IS SO ORDERED.**